UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

DYANNA SEAVEY,                                          Civil Action No.:

                                    Plaintiff,

                                                        **COMPLAINT**

            -against-

EVENT MEDIC NY INC. and JEFF SAPERSTEIN,
                                                        **JURY TRIAL REQUESTED**

                                    Defendants.
-------------------------------------------------------------------X

   Plaintiff, Dyanna Seavey ("Plaintiff"), by her attorneys, Law Offices of Yale Pollack, P.C.,

as and for her Complaint against Defendants, Event Medic NY Inc. and Jeff Saperstein

(collectively "Defendants"), alleges as follows:

**PRELIMINARY STATEMENT**

   1.  Plaintiff brings this action to remedy violations of the Fair Labor Standards Act, as

amended, 29 U.S.C. §§201 *et seq.* (the "FLSA") for the failure of Defendants to pay Plaintiff her

earned wages, including overtime, during the time she worked for Defendants.  Plaintiff seeks all

unpaid wages, liquidated damages, reasonable attorneys' fees and costs, and all other appropriate

legal and equitable relief, pursuant to 29 U.S.C. §§216(b) and 217, and other applicable federal

law.

   2.  Plaintiff also brings this action to remedy violations of New York State Labor Law,

including New York Labor Law §§190 *et seq.*, §§650 *et seq.* (the "NYLL"), and 12 N.Y.C.R.R.

§146.  Plaintiff seeks all unpaid wages, pre- and post- judgment interest, reasonable attorneys' fees

and costs, liquidated damages and other damages, and all other appropriate legal and equitable

relief, pursuant to NYLL §§198, 663.

## JURISDICTION AND VENUE

3.      Jurisdiction of this Court over Plaintiff's FLSA claims is invoked pursuant to 29 U.S.C. §216(b) and 28 U.S.C. §1331.

4.      Jurisdiction of this Court over Plaintiff's NYLL claims is invoked pursuant to 28 U.S.C. §1367(a) as the claims are so related to Plaintiff's FLSA claims as to form the same case or controversy under Article III of the United States Constitution.

5.      Venue is appropriate in this Court under 28 U.S.C. §1391(b) as the acts or events giving rise to the claims occurred within Eastern District and the residence of Defendants is within the Eastern District.

## PARTIES

6.      Plaintiff is an individual who resides in the County of Suffolk, State of New York.

7.      Upon information and belief, Defendant Event Medic NY Inc. ("Event Medic") is a domestic corporation authorized to do business in the State of New York, with its principal place of business located in the County of Nassau, State of New York.

8.      Upon information and belief, Defendant Jeff Saperstein ("Saperstein"), is an individual who resides in the County of Nassau, State of New York.

9.      Upon information and belief, Saperstein is the owner and officer of Event Medic.

10.     At all relevant times, Saperstein had the power to hire, fire, and control the wages and working conditions of Plaintiff.

11.     Saperstein had authority to, and did in fact, exercise operational control over Event Medic.

12.     Saperstein set the manner by which Plaintiff would work while employed by Event Medic, including the hours she would work and pay she would receive.

2

13.     Defendants seek medics to work for them at certain events that Defendants' clients need medics for, such as concerts, construction sites, movie and television sets, extreme sports events, water sports and other events throughout the United States.

14.     Clients interested in using Defendants' services are able to go to eventmedics.com to request a quote for an event within the United States.

15.     At all relevant times, Defendants affected commerce within the meaning of 29 U.S.C. §203 in that they have employees, such as Plaintiff, engaged in commerce or in the production of goods and/or services for commerce, and/or have employees handling, selling, or otherwise working on goods, materials and/or services that have been moved in or produced for commerce by any person in their employ, with gross volume of sales made or business done of not less than $500,000 per year.

16.     At all relevant times, Defendants were Plaintiff's employers within the meaning of the FLSA and the NYLL.

## FACTUAL ALLEGATIONS

17.     Plaintiff commenced her employment with Defendants in or about November 2019.

18.     At the commencement of her employment, Plaintiff worked as an event staffer, where she was responsible for tasks such as staffing events with EMTs and paramedics.

19.     During this time, Plaintiff generally worked an office schedule from 9:00 a.m. until 5:00 p.m., Mondays through Fridays.

20.     Commencing in June 2020, Saperstein told Plaintiff that she was going to start working "the Roster."

21.     The Roster is a list of medics who have signed up with Event Medics, showing where everyone is scheduled around the country and what time they are to be at and leave their

job site.

22.    As the keeper of the Roster, Plaintiff was in charge of ensuring that all of Event

Medic's contracted employees were on site and left at their scheduled time.

23.    The Roster, and, thus, Plaintiff's workday, started around 5:00 a.m. daily.

24.    At around 5:00 a.m. daily, medics would begin clocking in, via Event Medic's app

and phone, which time Plaintiff had to track.

25.    If a medic did not clock in at his or her scheduled time, Plaintiff had to call the

medic to see if they were on site and, if she could not get in touch with them, she had to start

contacting Defendants' clients to let them know that they may have to wait for a standby medic.

26.    When a standby medic may be required, while at home, Plaintiff would have to log

into Event Medic's portal to cancel the medics who were scheduled but did not appear so that they

did not have the option of submitting an invoice for their time.

27.    As most sites did not have a main standby medic, Plaintiff was required to log into

the portal in order to obtain a list of nearby medics.

28.    Upon obtaining the list of nearby medics, Plaintiff would then begin calling or

texting each of them to see if they were available.

29.    Seeking out alternate or standby medics was extremely time-consuming, especially

in more remote locations and this was being done while Plaintiff was also checking in other medics

who arrived on time.

30.    As a result of being assigned the Roster, Plaintiff worked for Defendants from at

least 5:00 a.m. each day weekday until 9:00 a.m., when her regularly scheduled office shift at

Event Medic commenced.

31.    When Plaintiff was in the office supposed to be performing her regular duties for

staffing events, she was also required to work on the Roster as medics checked in and out throughout Plaintiff's workday.

32.    Once Plaintiff's office hours were completed, her workday for Defendants was not over as the Roster required her to work additional hours into the evening.

33.    After leaving the office around 5:00 p.m. during the week, once home, Plaintiff was required to ensure that all the medics were at or left their assigned site and signed in or out when scheduled.

34.    While Plaintiff performed these tasks generally until 11:00 p.m. each night, certain productions or events required Plaintiff to check medics in or out between 12:00 a.m. until 3:00 a.m. if the event so required.

35.    In addition to working these hours during the week, Plaintiff also had to work on the Roster on the weekends.

36.    When working on the Roster on the weekends, the hours were the same, generally checking people in and/or out starting at 5:00 a.m. all the way through each day until about 11:00 p.m. each night.

37.    Plaintiff would have to write down the clock out times and input them into the computer for Defendants.

38.    Since Event Medic has medics working throughout the United States, Plaintiff was required to be available twenty-four hours a day, seven days a week in order to ensure that the Roster was complete.

39.    Plaintiff would receive calls while grocery shopping or eating dinner with her family, and she had to pick up the phone each time someone called to manage the Roster.

40.    If Plaintiff missed a call, she would have to immediately call the medic back at the

risk of being disciplined by Defendants or a client calling in and stating that nobody answered their call.

41.     During her employment, Plaintiff was paid $20 per hour from Event Medic for office hours.

42.     For her services on the Roster, Plaintiff generally received $100 extra for the additional work she performed Monday through Friday, plus $20 per hour on weekends – with a cap of twelve hours – or $340 per week, for working the Roster.

43.     Plaintiff believed she should have been paid her overtime rate of pay for all hours worked on the Roster as she regularly worked forty office hours, meaning that all work performed on the Roster outside of the office should have been paid at time and a half.

44.     While there were numerous instances during Plaintiff's employment that she complained to Saperstein about not receiving overtime hours for working on the Roster or for additional compensation for performing the Roster tasks, he never provided her with such compensation.

## COUNT ONE
### (Failure to Pay Overtime Wages – FLSA)

45.     Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

46.     The FLSA requires that employers pay all employees at least one and one-half (1.5) times the employee's wage for all hours worked in excess of forty (40) during any workweek, unless they are exempt from coverage.

47.     During her employment, Plaintiff received no overtime pay from Defendants who required her to perform, or be ready to perform, work for on the Roster so that Defendants' business operations could continue by servicing their clients throughout the nation.

48.     At all relevant times, Defendants willfully, regularly, repeatedly, and knowingly failed to pay Plaintiff the required overtime wages to which he is entitled.

49.     Plaintiff seeks damages for her unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT TWO
### (Failure to Pay Overtime Wages - NYLL)

50.     Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

51.     The NYLL requires that employers pay all employees at least one and one-half (1.5) times the employee's wage for all hours worked in excess of forty (40) during any workweek, unless they are exempt from coverage.

52.     During her employment, Plaintiff received no overtime pay from Defendants who required her to perform, or be ready to perform, work for on the Roster so that Defendants' business operations could continue by servicing their clients throughout the nation.

53.     At all relevant times, Defendants willfully, regularly, repeatedly, and knowingly failed to pay Plaintiff the required overtime wages to which he is entitled.

54.     Plaintiff seeks damages for her unpaid overtime wages, liquidated damages, pre- and post-judgment interest, reasonable attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT THREE
### (Notice Violations – NYLL)

55.     Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

56.     Defendants willfully failed to supply Plaintiff with notices as required by NYLL §195(1) containing Plaintiff's rate or rates of pay and basis thereof; whether paid by the hours, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

57.     Based on Defendants' violations of the NYLL §195(1), Plaintiff is entitled to recover from Defendants $5,000, pursuant to NYLL §198(1-b), as well as reasonable attorneys' fees and costs.

## COUNT FOUR
### (Wage Statement Violations – NYLL)

58.     Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

59.     Defendants failed to furnish Plaintiff with accurate statements with every payment of wages as required by NYLL §195(3), listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours worked.

60.     Based on Defendants' violations of the NYLL §195(3), Plaintiff is entitled to

recover from Defendants $5,000, pursuant to NYLL §198(1-d), as well as reasonable attorneys' fees and costs.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and claims with respect to which she has a right to a jury trial.

## BCL §630 NOTICE AND DEMAND

Pursuant to New York Business Corporation Law ("BCL") §630, Plaintiff hereby advises that it intends to hold International's top ten shareholders and/or members liable for the unpaid wages referenced herein. Further, Plaintiff demands that International permit an examination of its record of shareholders under BCL §624 so that liability may be imposed on its top ten shareholders for the unpaid wages referenced herein.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief as follows:

A.     Damages for all amount of unpaid wages, including overtime wages, under the FLSA and/or the NYLL;

B.     All liquidated damages in an amount equal to wages owed and other statutory remedies provided for under the FLSA and/or NYLL;

C.     Pre- and post-judgment interest;

D.     Reasonable costs and attorneys' fees; and

E.      An award of such other and further relief as this Court deems necessary and proper.

Dated:  March 22, 2022
        Syosset, New York

Respectfully submitted,
**LAW OFFICES OF YALE POLLACK, P.C.**

By: */s/ Yale Pollack*
         Yale Pollack, Esq.
*Attorneys for Plaintiff*
66 Split Rock Road
Syosset, New York 11791
(516) 634-6340 Phone
(516) 634-6341 Fax
ypollack@yalepollacklaw.com