

# Law Offices of Yale Pollack, P.C.

66 Split Rock Road
Syosset, New York 11791
Phone: (516) 634-6340
Fax: (516) 634-6341
www.yalepollacklaw.com

Yale Pollack, Esq.
ypollack@yalepollacklaw.com

March 14, 2023

**VIA ECF**
Honorable Joan M. Azrack
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    *Seavey v. Event Medic NY Inc. et al.*
              *Eastern District Case No.: 22-cv-01563-JMA-LGD*

Dear Judge Azrack:

      This letter is respectfully submitted seeking the Court's approval of the settlement reached between the parties, per the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), as Plaintiff's claims arise under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

      The parties have memorialized and executed an updated settlement agreement, as well as a Stipulation of Dismissal, which will discontinue the above-captioned case, with prejudice, in exchange for a payment by Defendants to Plaintiff in the amount of $80,000.00 in satisfaction for all claims raised in this action (and in accordance with the terms of the settlement agreement).

### *Claims and Defenses*

      It is submitted that there are a number of factual and legal disputes between the parties which could ultimately impact Plaintiff's ability to prevail if this case would have proceeded to dispositive motion practice or to trial, as well as her ability to collect a money judgment from Defendants.

      Plaintiff commenced this action on March 22, 2022, claiming that she was unlawfully denied her wages during his employment with Defendants, in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), as well as damages for alleged wage notice and wage statement violations. Plaintiff alleges that she worked in Defendants' office as an event staffer, where she was responsible for tasks such as staffing events with EMTs and paramedics. Commencing in June 2020, Plaintiff alleges that Defendants assigned her to work on the Roster, which, Plaintiff claims, is a list of medics nationwide contracted with Defendants to perform

Honorable Joan M. Azrack
March 14, 2023
Page 2

services at certain events or job sites. Plaintiff avers that the Roster, at times, required Plaintiff to start checking in medics as early as 5:00 a.m. EST and checking them out as late at 3:00 a.m. EST as Defendants staffed events that occurred on the West Coast. Plaintiff alleges that she worked in excess of forty hours per week, being on call for twenty-four hours a day, seven days a week. Plaintiff received some compensation for this work but, according to Plaintiff, not at an hourly rate of one and one-half times her wage rate. As well, Plaintiff alleges that Defendants failed to supply her with the notices and statements required under NYLL.

Defendants deny any wrongdoing and liability. Defendants claim that Plaintiff was properly compensated for all hours worked and that the number of hours she alleges to work are exaggerated. Defendants also flatly deny Plaintiff's factual claims about the Roster. Defendants' disputes with Plaintiff's factual claims include how the Roster was operated, the amount of time Plaintiff allegedly worked on the Roster, and how Plaintiff was compensated for her work. Defendants claim that Plaintiff was appropriately compensated at all times. Thus, Defendants would seek to prove that they paid Plaintiff for all work performed, that the method(s) of payment were understood and agreed upon by the parties, and all payment practices were in good faith and with the belief that they were not in violation of the FLSA, NYLL, or other associated guidelines. Plaintiff, on the other hand, would seek to prove that any alleged violations were willful and that any purported intention to comply with the wage and hour laws was not done pursuant to the letter or spirit of the FLSA and NYLL. Moreover, Plaintiff understands that even if she would have the ability to recover, her damages would be limited if it is found that Defendants' alleged violations were not. Defendants also deny the willfulness of any alleged violations under the FLSA and NYLL. *See Donovan v. Carls Drug Co.*, 703 F.2d 650, 652 (2d Cir. 1983) ("Employers willfully violate FLSA when (1) they know that their business is subject to FLSA and (2) their practices do not conform to FLSA requirements.").

In light of the foregoing disputes and the risks associated therewith, the parties agreed to settle the case to avoid further litigation, motion practice, and trial.

### *The Settlement Terms*

Pursuant to the Settlement Agreement (*annexed as Exhibit 1*),[1] the parties have agreed to the following break-down as to payment of the total $80,000.00 settlement amount:

- Plaintiff's Recovery: $52,751.34
- Attorneys' fees and expenses: $27,248.66
  1/3 contingency fee = $26.666.66;
  Expenses in the amount of $582 ($402 filing fee; $180 process server)

The parties believe this settlement to be a fair resolution to this litigation, due to the aforementioned disputes about the value of Plaintiff's claims.

---

[1] The parties are awaiting the signature for Defendant Event Medic NY Inc., which will be filed as a supplemental agreement immediately upon receipt from Defendants.

Honorable Joan M. Azrack
March 14, 2023
Page 3

### *The Settlement Should be Approved*

The standard for approval of FLSA settlement is well-established in the Second Circuit. As stated by the Court in *Serebryakov v. Golden Touch Transp. of NY. Inc.*, 2013 WL 3364393, at *2 (E.D.N.Y. 2013), "[i]n the absence of a certified class, a district court typically considers the following factors to determine whether a settlement of individual FLSA claims is reasonable: (1) the complexity, expense, and likely duration of litigation; (2) the stage of the proceedings and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of defendants to withstand a larger judgment; and (6) the range of reasonableness in light of the best possible recovery and all the risks of litigation." *Id.* at *2 (citations omitted). *See also Diaz v. Scores Holding Co.,* No. 07-8718 (THK), 2011 WL 6399468, at *2 (S.D.N.Y. 2011) ("Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bonafide* disputes...Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, courts will approve the settlement")(citations omitted).

Based on the *bona fide* disputes as to the value and viability of Plaintiff's claims, as well as the inherent risks of trial, the parties respectfully submit that the Settlement Agreement represents a fair and reasonable settlement of Plaintiff's claims in this action, especially given that the settlement amount was obtained at mediation.

As set forth above, Defendants contend that Plaintiff is not owed any unpaid wages or other amounts. However, Defendants realize that there is the potential risk for significant expenses and liability if this case is not settled. While Plaintiff believes he would prevail on her claims, she acknowledges that she faces significant risk in establishing liability and damages should this case proceed. Plaintiff is cognizant of the risks and uncertainty of protracted litigation, motion practice, potential appeals, and other factors that might affect her ability to recover on any of the claims asserted in this action, including the Defendants' inability to withstand a larger judgment.

Plaintiff's alleged potential recovery in this matter would have been approximately $273,000.00, exclusive of liquidated damages, prejudgment interests, attorneys' fees and costs if she was to prevail on all her claims, including that she was on-call twenty-four hours a day for seven days each week. If accounting for a number around thirteen-hour workdays, the unpaid wages allegedly amount to $92,820.00. Should the matter have proceeded further in litigation, Plaintiff could have recovered $0 if Defendants were able to show that Plaintiff was properly paid for all hours worked especially if it was concluded that Plaintiff was "waiting to be engaged" when she was assigned to work on the Roster. Thus, the $80,000.00 figure reached was a fair compromise given the range of possible recovery for Plaintiff.

It is respectfully submitted that approval of this settlement is also warranted because it is the product of arms-length negotiations between parties represented by knowledgeable and experienced counsel who focus their respective practices on wage and hour litigation. *Wolinsky v. Scholastic, Inc.,* 900 F. Supp.2d 322 (S.D.N.Y. 2012). Throughout the course of those negotiations, the parties shared their respective views on the validity and potential value of the claims, and

Honorable Joan M. Azrack
March 14, 2023
Page 4

ultimately, through mediation, reached a deal that both sides felt, given the risks associated with protracted litigation, was a fair compromise. Settlement at this stage of the case for this amount unquestionably constitutes the most efficient and effective conclusion to this litigation for all parties. Counsel on both sides have litigated numerous FLSA and NYLL cases both on an individual and class/collective scale.

The settlement agreement submitted for approval is in line with the mandates of *Cheeks*. The Agreement does not contain a confidentiality provision; the Agreement only provides for a release of NYLL and FLSA claims up to the date of the signing of the Agreement; and Plaintiff's attorneys' fees will be one-third of the total settlement.

Plaintiff's counsel has experience representing employees in wage and hour actions and has been focusing almost exclusively on prosecuting claims on behalf of employee since he formed his practice in 2015. Prior to forming his own firm in 2015, Plaintiff's counsel worked at two firms on Long Island, where his focus was on employment law. Plaintiff's counsel used his experience to obtain an excellent result for the Plaintiff, which the client is very pleased with. Thus, the quality of representation weighs in favor of approving the requested fee.

The requested fee attorneys' fee[2] is reasonable in relation to the settlement. The settlement agreement provides for a fee of $27,248.66, which represents one-third of the total settlement amount, plus expenses advanced on Plaintiff's behalf in the litigation ($402 filing fee; $180 process server fee). The proposed fee was consensual and agreed to by Plaintiff. *See Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (noting the consensual nature of the fee arrangement); *see also Rangel v. 639 Grand St. Meat & Produce Corp.,* No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit."). Moreover, "[c]ontingency fees of one-third in FLSA cases are routinely approved in this Circuit." *Maldonado v. Srour*, No. 13 Civ. 5856, 2016 U.S. Dist. LEXIS 139881, at *3 (E.D.N.Y. Oct. 6, 2016); *Garcia v. Atlantico Bakery Corp.*, No. 13 Civ. 1904, 2016 U.S. Dist. LEXIS 84631, at *3-4 (S.D.N.Y. June 29, 2016). The retainer between Plaintiff and this firm is annexed hereto as Exhibit 2 to demonstrate the fairness of the agreed upon fee.

Finally, the FLSA is a remedial statute designed to protect employees from unfair labor practices. 29 U.S.C. § 202(a). A fair attorneys' fee award that takes into account the services provided and the risks undertaken furthers these remedial purposes. For the reasons set forth about, we respectfully request that the Court approve the attorneys' fees and costs set forth in the settlement agreement.

---

[2] For the purpose of this application only, Defendants do not challenge the reasonableness of opposing counsel's fee request as it is not appropriate for Defendants to do so on this application.

Honorable Joan M. Azrack
March 14, 2023
Page 5

## *Conclusion*

      In light of the foregoing, it is respectfully submitted that the proposed settlement amount is fair and reasonable, and further, that the terms of the settlement agreement comport with the requirements under the FLSA and NYLL. It is respectfully requested that the Court approve the settlement. We thank the Court for its time and consideration.

      Respectfully submitted,
      Law Offices of Yale Pollack, P.C.

      */s/ Yale Pollack*
      Yale Pollack, Esq.

Enclosure

cc:    All Counsel (via ECF)